# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANUSZ CZARNIAK | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 18-cv-534 |
| v. | )<br>) Judge Sharon Johnson Coleman |
| KIRSTJEN NIELSEN, Secretary<br>Department. of Homeland Security;<br>MARTHA MEDINA, Field Office<br>Director, Chicago Field Office,<br>United States Citizenship &<br>Immigration Services, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER

Plaintiff Janusz Czarniak filed this action against Kirstjen Nielsen, Secretary of the Department of Homeland Security and Martha Medina, the Chicago Field Office Director of United States Citizenship & Immigration Services ("USCIS") (collectively defendants). Czarniak seeks declaratory judgment under 28 U.S.C. § 1331 and asks the Court to set aside USCIS' decision to deny Czarniak's application to become a lawful permanent resident. Currently before the Court is the defendants' motion to dismiss Czarniak's complaint pursuant to Federal Rule Civil Procedure 12(b)(6). For the reasons explained below, the defendants' motion to dismiss Czarniak's complaint [9] is granted.

**Background**

The following facts are taken from Czarniak's interview with USCIS and are undisputed unless otherwise noted. Czarniak is a native and citizen of Poland. While in Poland, a "travel organizer" informed Czarniak of the possibility to travel to the United States by ship. In January 1992, Czarniak paid the organizer $6,000 to coordinate the travel to Chicago, Illinois in the United States. Czarniak was driven to Germany to board a cargo ship. Prior to boarding the ship, Czarniak

1

was joined by five other people he did not know who arrived in a different car who were also traveling to the United States. After an individual stamped his passport, Czarniak and his roommate were shown to a room where they were locked in and told they could not leave until someone arrived to get them.

During the ship's first stop in France, Czarniak and his roommate hid in a closet while the customs agent checked the ship. Czarniak had contact with the ship's captain when he got sick on board. The captain examined Czarniak's passport. Czarniak states the captain did not further question him. Once the ship arrived in Canada, Czarniak hid in the ceiling once the customs agents were aboard the ship. After the ship arrived in New York City, Czarniak was instructed to wait for a pass to leave the ship. The man who gave Czarniak a pass to leave the ship led him to a car which drove him from New York to Chicago.

On February 3, 2001, Czarniak married a United States citizen who filed an I-130 visa petition on his behalf, which was approved on August 1, 2001. On April 8, 2003, Czarniak applied for lawful permanent resident ("LPR") status. On October 26, 2004, Czarniak interviewed with USCIS pertaining to his Adjustment of Status application. USCIS denied Czarniak's application on January 20, 2005 finding that he was a "stowaway[1]" and therefore ineligible for LPR status. On May 16, 2017, Czarniak filed a second application for LPR status. On October 23, 2017, USCIS again denied Czarniak's application. Czarniak requests that the Court makes a finding that he is not a stowaway and seeks to set aside USCIS' denial of his application to adjust his status to LPR. The defendants' have moved to dismiss Czarniak's complaint.

---

[1] While the Court is not fond of the use of the term "stowaway" to describe a group of alien immigrants, the Court uses the term provided by statute. *See* 8 U.S.C. § 1101(a)(49).

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

**Discussion**

*A.    Immigration Law as to Admissibility*

The burden is on the alien applicant to demonstrate "his eligibility for citizenship in every respect." *I.N.S. v. Pangilinan*, 486 U.S. 875, 886, 100 L. Ed. 2d 82, 108 S. Ct. 2210, 2217-2218 (1988) (quoting *Berenyi v. District Director, INS*, 385 U.S. 630, 637, 17 L. Ed. 2d 656, 87 S. Ct. 666, 670-671 (1967)). "[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1429. To be lawfully admitted for permanent residence, the alien must have "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws. . . ." 8 U.S.C. § 1101(a)(20); *Bonifon v. Rodriguez*, 270 F. Supp. 3d 465, 469 (D. Mass. 2017).

Under 8 U.S.C. § 1182(a)(6)(A)(i), an alien is inadmissible if he or she is "present in the United States without being admitted or paroled, or . . . arrives in the United States at any other time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). An

3

exception to this rule is section 1255(i) which is provided "for 'certain grandfathered aliens' who would otherwise be ineligible to adjust status because they entered without inspection or are otherwise precluded from availing themselves of the more common form of adjustment of status." *Akwasi Agyei v. Holder*, 729 F.3d 6, 9 (1st Cir. 2013) (citation omitted). Nevertheless, the section 1255(i) exception does not apply to stowaways. *Bonifon*, 270 F. Supp. at 470 (stating that in light of section 1255(i), "there is no comparable exception for stowaways"). Other district courts have held that "stowaways are a particularly disfavored category of aliens" and have distinguished stowaways from entitlements afforded to other aliens. *Linea Area Nacional de Chile S.A. v. Sale*, 865 F. Supp. 971, 980 (E.D.N.Y. 1994).

B. *Application*

In this case, defendants argue that Czarniak's complaint should be dismissed for failure to state a claim. In support, defendants assert that USCIS was correct to deny Czarniak's application (1) because he arrived to the United States as a stowaway and therefore is ineligible for LPR status and (2) because the exception to the "entry doctrine" under section 1255(i) does not apply.

"The term 'stowaway' [is defined as] any alien who obtains transportation without the consent of the owner, charterer, master or person in command of any vessel or aircraft through concealment aboard such vessel or aircraft." 8 U.S.C. § 1101(a)(49). "A passenger who boards with a valid ticket is not to be considered a stowaway." *Id*. Defendants argue that Czarniak is a stowaway for several reasons including the fact that he was locked in a room, did not have a ticket or proof of purchase, and had to hide repeatedly to avoid discovery.

In response, Czarniak contends that because he was not officially restrained, he did not arrive as a stowaway. Specifically, Czarniak points to the captain's inaction after discovering his presence on the ship, despite the requirement for captains to detain alien stowaways.

4

The parties have not provided, and the Court has not found, any recent Seventh Circuit cases that address this issue. However, other district courts have analyzed several factors regarding aliens who arrive without inspection. In *Bonifon v. Rodriguez*, the court granted summary judgment against a plaintiff who brought a declaratory action against USCIS for denying his application for LPR status. The court held that Bonifon, a passenger who boarded a ship from the Ivory Coast to Florida and impersonated crewmembers, was a stowaway (and therefore ineligible for LPR status) because he "did not have permission to be on the ship and . . . obtained free passage by the means of deception." 270 F. Supp. 3d at 470. While the plaintiff in *Bonifon* argued that the stowaway designation was inapplicable because he did not physically conceal himself and even pretended to be a crewmember, the court held that concealment was not limited to physically hiding. *Id.* at 471 ("Obfuscating the truth also constitutes concealment"). The court also noted that the plaintiff did not obtain permission to be on the ship and did not possess a valid ticket. *Id.* at 467.

In this case, the stowaway analysis is fairly straightforward. In his interview with USCIS, Czarniak stated that he boarded the ship without buying a ticket which transported him from Germany to the United States. Czarniak also told USCIS that the captain did not become aware of his presence until he became sick. Further, Czarniak asserted that he was locked in a room and could not leave until someone opened the door. Czarniak even hid in a closet at one stop and in the ceiling at another stop to go undetected by customs agents. It is clear from complaint and attached statements that Czarniak arrived without the consent of the person in charge of the boat. *See* § 1101(a)(49).

Czarniak argues that because the captain did not detain him after learning of his presence on the ship and only asked for his passport, he did not arrive in the United States as a stowaway. Yet Czarniak provides no legal authority for this argument. The fact that Czarniak was presented to the captain when he became ill does not change the analysis. The vital question is not whether he

5

possessed a passport, but rather did Czarniak purchase a ticket to board the ship. *See* 8 U.S.C. § 1101(a)(49) ("A passenger who boards with a valid ticket is not to be considered a stowaway"). Czarniak's pleadings coupled with the statements he made to USCIS demonstrate that the answer to that question is no. *See U.S. ex rel. Candreva v. Smith*, 27 F.2d 642, 644 (7th Cir. 1928) (holding that an alien arrived as a stowaway even though he paid workers $150 to transport him because "what they received from him was not to pay for the passage, which they had no[] right to contract for, but by some unexplained artifice to keep his presence on the ship unknown to the responsible officers").

Even construing all the facts in a light most favorable to Czarniak, as the Court must do at the pleading stage, the pleadings demonstrate that he arrived as a stowaway[2]. Accordingly, because stowaways are not eligible for LPR status, Czarniak's complaint fails to state a claim upon which relief can be granted. Therefore, the defendants' motion to dismiss is granted.

As the Court finds that Czarniak arrived as a stowaway, the Court need not address the parties' arguments regarding Czarniak's admissibility under the entry doctrine.

**Conclusion**

Based on the foregoing discussion, the defendants' motion to dismiss Czarniak's complaint [9] is granted.

IT IS SO ORDERED.

Date: 11/9/2018

Entered: /s/ Sharon Johnson Coleman
SHARON JOHNSON COLEMAN
United States District Judge

---

[2] Despite the sympathetic circumstances of his case, Czarniak's pleadings fit squarely with the statute's clear definition of stowaway.

6